UNITED STATES DISTRICT COURT

Northern District of California

San Francisco Division

| | |
|---|---|
| DOUGLAS CHURCHILL, PETER LAU, THE CALGUNS FOUNDATION, INC., AND THE SECOND AMENDMENT FOUNDATION, INC.<br><br>Plaintiffs,<br><br>v.<br><br>KAMALA HARRIS - as Attorney General, CALIFORNIA DEPARTMENT OF JUSTICE, CITY/COUNTY OF SAN FRANCISCO, and SAN FRANCISCO POLICE DEPARTMENT, CITY OF OAKLAND, OAKLAND POLICE DEPARTMENT, and Does 1 TO 20<br><br>Defendants.<br>_____/ | No. C 12-01740 LB<br><br>ORDER GRANTING MOTION TO DISMISS<br><br>[ECF No. 21] |

## I. INTRODUCTION

The San Francisco and Oakland police departments ("SFPD" and "OPD") confiscated firearms from Plaintiffs Douglas Churchill and Peter Lau. Together with the Calguns Foundation and the Second Amendment Foundation, Mr. Churchill and Mr. Lau sued the police departments, the City and County of San Francisco, the City of Oakland, the California Attorney General ("AG"), and the California Department of Justice ("CalDOJ"). *See* Compl., ECF No. 1.[1]  In claims one through

---

[1] Citations are to the Electronic Case File ("ECF") with pin cites to the electronically-generated page numbers at the top of the document.

C 12-01740 LB (ORDER GRANTING MOTION TO DISMISS)

four, they allege that the requirements for proof of ownership for return of the firearms violate the Second, Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution. *See* Compl., ECF No. 1, at 1-9. They name the AG and the CalDOJ as defendants only in claims one and four (the Second and Fourteenth Amendment claims) and name the other defendants in claims one through four. *Id.* They also allege state-law causes of action against San Francisco, Oakland, and the police departments for conversion and seek attorney's fees under California Penal Code section 33850 for failure to comply with the Penal Code's provisions for return of firearms. *Id.* at 9-10.

As to claims one and four against the AG and the CalDOJ, Plaintiffs seek only prospective injunctive relief from them to change the content of the letters that they issue to persons seeking return of confiscated firearms. *Id.* ¶ 8. Plaintiffs do not challenge the procedures for return of the firearms under California Penal Code section 33800 *et seq.* and instead take issue with what the CalDOJ says in its letters about the law. *Id.* ¶¶ 6-8. The concern is that police departments are interpreting the letters wrongly to make owners "prove up" their ownership right to their firearms, returned, and this violates the U.S. Constitution. *Id.* ¶ 21. They want the AG and the CalDOJ to edit the letters to eliminate the confusion. *Id.* ¶ 23.

The AG and the CalDOJ move to dismiss on the ground that the letters lack a sufficient connection to the injury in the case, and thus they are immune from suit under the Eleventh Amendment. Mot., ECF No. 21 at 7. The court held a hearing on November 15, 2012, and it grants the motion to dismiss on Eleventh Amendment grounds. The lawsuit against the police departments who apply the statute – not the claims against the AG and the CalDOJ based on a form letter sent to persons seeking return of the firearms – is the appropriate mechanism for challenging the constitutionality of the procedures that local law enforcement officials apply.

## II. BACKGROUND

**A. Facts**

**1. The Parties**

Douglas Churchill and Peter Lau live in San Francisco and Alameda counties, respectively. Compl. ¶¶ 1-2. The Calguns Foundation, Inc., is a California non-profit organization whose purpose is to "support[] the California firearms community by promoting education for all stakeholders about

California and federal firearms laws, rights and privileges, and defending and protecting the civil rights of California gun owners." *Id.* ¶ 3. The Second Amendment Foundation, Inc., is a Washington non-profit organization located in Bellevue, Washington with over 650,000 members, some located in California. *Id.* ¶ 4. Its purpose includes "education, research, publishing and legal action focusing on the Constitutional right to privately own[] and possess firearms, and the consequences of gun control." *Id.*

The AG is charged with enforcing, interpreting and promulgating procedures for return of firearms under state law. *Id.* ¶ 6 (citing Cal. Penal Code §§ 26590, 33850-33895). Similarly, the CalDOJ enforces, administers, and interprets the law and promulgates regulations regarding the return of firearms. *Id.* As to San Francisco, Oakland, and their police departments, the complaint alleges that the municipalities set the policies and procedures for the police departments, including training of police officers regarding the implementation of the procedures for returning firearms under the California Penal Code. *Id.* ¶¶ 9, 11 (citing Cal. Penal Code §§ 26590, 33850-33895).

**2. Mr. Churchill's Firearms Are Confiscated**

On or about January 11, 2011, SFPD confiscated several firearms from Mr. Churchill as part of a criminal investigation. *Id.* ¶¶ 17-18. Mr. Churchill was issued a receipt for the firearms. *Id.* ¶ 18. On or about February 4, 2011, the San Francisco District Attorney's Office dismissed the charges against Mr. Churchill. *Id.* ¶ 19. Mr. Churchill subsequently tendered a Law Enforcement Gun Release Application to the CalDOJ, as required by California law. *Id.* Plaintiffs allege that during April and June 2011, the CalDOJ "approved the release of some, but not all of Douglass Churchill's firearms." *Id.* ¶ 20. Plaintiffs explain that the AG issued "form" letters with "the following relevant language (w/out citations):"

   a. However, this letter does not establish or prove ownership of any firearm.

   b. It is your responsibility to prove that [you] own or have a right to possess any firearm in the custody of a court or law enforcement agency [LEA] that you wish to have returned to you. A court or LEA with direct access to CalDOJ's Automated firearms System (AFS), is required to check AFS to determine whether the person seeking return of a firearm is listed as the owner/purchaser of the firearm(s) sought to be returned.

   c. In the case of any firearm (handgun/long gun) that is recorded in AFS, the firearm can only be returned to the person who is listed in AFS as the owner/possessor of the firearm and not to any other person.

    d. However, a court or LEA may return such a handgun to a person who demonstrates that the handgun was transferred to him or her in a manner that was lawful, but was not required pursuant to Penal Code section 12077 to be recorded in CalDOJ's records.

    e. In the case of a long gun that is not recorded in AFS, the long gun can be returned to a person who is not listed in AFS as the owner/possessor of the long gun because AFS generally does not include ownership/possession information about long guns.

    f. The person seeking return of a long gun not recorded in AFS must present proof of ownership, such as a sales receipt from a licensed firearms dealer, or other bona fide evidence the long gun was sold or transferred to him or her in compliance with state and federal law.

*Id.* ¶¶ 20-21. Plaintiffs allege that "SFPD interprets this 'form letter,' which 'carries the weight of the legal opinion of [the] California Attorney General's Office,' as requiring gun owners to prove that they own their confiscated firearms, even though no official records may exist." *Id.* ¶ 21. Plaintiffs acknowledge that the "CITY/COUNTY OF SAN FRANCISCO has an independent duty to interpret California law, [but] the confusion created by the Attorney General's form letter is [a] contributing factor in the continuing violation of DOUGLAS CHURCHILL'S rights." *Id.* ¶ 23.

Mr. Churchill seeks the return of seven firearms: three .22 caliber rifles, a 20 gauge shotgun, a 12 gauge shotgun with two barrels, a 12 gauge barrel, and a .22 caliber single shot handgun. *Id.* ¶ 24.

### 3. Mr. Lau's Firearm is Confiscated and Returned

The OPD confiscated Mr. Lau's firearms during an investigation into his brother's suicide. *Id.* ¶ 26. Mr. Lau completed the administrative procedures for the return of his firearms but the OPD would not return one of his rifles because they considered it to be an assault rifle under California Penal Code section 12276.1. *Id.* Plaintiffs dispute this categorization: it is not an assault weapon because it lacks a detachable magazine. Instead, it has a "bullet button" on the magazine that requires a tool to remove the magazine. *Id.* ¶ 27.

The OPD returned the firearm to Mr. Lau after he filed this complaint and replaced the malfunctioning bullet button with a functioning bullet button. Stipulation, ECF No. 18 at 1-2.

### B. The Relief Sought From the AG and the CalDOJ

The two claims are only for injunctive relief. Complaint, ECF No. 1, ¶¶ 8, 31, and 43; *see id.* at 10, ¶ A ("all Defendants must apply correct and well established legal principles for determining

1  ownership and possession of firearms by law-abiding citizens, including but not limited to the
2  presumptions in California Evidence Code § 637 with respect to long guns and handguns owned
3  prior to the creation of the State's AFS [Automated Firearms System] system").

4  As to the Second Amendment claim, Plaintiffs allege that the AG and the CalDOJ "have
5  wrongfully interpreted the law of personal property and firearms in particular.  Said wrongful
6  interpretation is a contributing factor in a continuing violation of Plaintiffs' Second Amendment
7  rights." *Id.* ¶ 31.

8  As to the Fourteenth Amendment claim, Plaintiffs similarly allege that the AG and the CalDOJ
9  "have wrongfully interpreted the law of personal property and firearms in particular resulting in a
10 violation of due process." *Id.* ¶ 43.

### C. Other Relevant Procedural History

Plaintiffs filed their case on April 6, 2012.  *See* Complaint, ECF No. 1.  The parties settled Mr. Lau's claims against the City of Oakland and the OPD, and Plaintiffs dismissed their case against these defendants with prejudice.  *See* Stipulations, ECF Nos. 18-19; Dismissal, ECF No. 20.

The City and County of San Francisco answered the complaint on July 30, 2012.  Answer, ECF No. 15.  The AG and the CalDOJ filed their motion to dismiss on August 21, 2012.  ECF No. 21.

### III. ANALYSIS

Plaintiffs' claims against the AG and the CalDOJ are based on their challenges to whether the CalDOJ form letters to claimants reflect accurately the state statutory scheme for returning firearms. The AG and the CalDOJ argue that the seizing law enforcement agency (e.g., the SFPD), not the CalDOJ, makes the determination whether to return firearms, and that the CalDOJ letters are too attenuated from the independent actions by local law enforcement for the AG and the CalDOJ to be subject to suit under the Eleventh Amendment.  Motion, ECF No. 21 at 7.  The court starts first with the statutory scheme for return of the firearms and then turns to an analysis of immunity under the Eleventh Amendment.

### A. The Statutory Scheme For Return of Firearms and the Interplay with the CalDOJ Letter

When a law enforcement agency seizes a firearm, it issues the possessor a receipt describing the firearm and any serial or other identification on the firearm and the process for seeking the firearm's

return. Cal. Penal Code § 33800. A claimant seeking its return must submit an application to the CalDOJ that includes identifying information about the claimant and descriptive information (make, model, serial number, etc.) about the firearm. Cal. Penal Code § 33850. The CalDOJ must respond within 30 days. *Id.* § 33865(b). It performs a background check to be sure the claimant is eligible for the firearm's return. *Id.* § 33865(a). (An example of a person not eligible for a firearm's return is a convicted felon.) If the claimant is eligible, then the CalDOJ notifies the applicant and includes a description of the firearm by make, model, and serial number. If the firearm is not a handgun and does not have this identifying information, the notice says that. If it is a handgun (and after January 1, 2014, any firearm), the CalDOJ enters a record of it into AFS. *Id.* § 33865(c) and (d).

Only owners or legal possessors of a firearm are entitled to its return. *Id.* § 33855. The CalDOJ uses the make, model, and serial number to see if the firearm is recorded in the CalDOJ's Automated Firearms System ("AFS") and whether AFS shows that the claimant is the owner. *Id.* § 33865(c), 33855(b). Some guns, such as long guns, are not required to be registered in AFS, and so the CalDOJ cannot determine their ownership from AFS. *Id.* § 28100(b)(3). If the gun is recorded in AFS in the name of an otherwise eligible person who seeks its return, it is returned. *Id.* § 33855(b).

The issue here is what happens when a firearm is not listed in AFS. *See* Complaint at 10, ¶ A (defendants must apply correct legal principles for determining ownership and possession of firearms including "long guns and handguns owned prior to the creation of the State's AFS system"); Opposition, ECF No. 24 at 6-7 (no long guns and not all handguns are in AFS; AFS recorded handgun purchases starting only in 1991). The CalDOJ's form letter to claimants like Mr. Churchill informs them of the following:

> In the case of a handgun, the handgun cannot, as a general rule, be returned unless/until it is recorded in AFS as being owned by or loaned to the person who seeks its return. (Pen. Code, § 33855, subd. (a) (b).) However, a court or LEA [law enforcement agency] may return such a handgun to a person who demonstrates that the handgun was transferred to him or her in a manner that was lawful, but was not required pursuant to Penal Code sections 28150 through 28180 to be recorded in [the CalDOJ's] records.
>
> In the case of a long gun that is not recorded in AFS, the long gun can be returned to a person who is not listed in AFS as the owner/possessor of the long gun because AFS generally does not include ownership/possession information about long guns. (Pen. Code, § 11106, subd. (b).) The person seeking return of a long gun not recorded in AFS must present proof of ownership, such as a sales receipt from a licensed firearms dealer, or other bona fide evidence the long gun was sold or transferred to him in compliance with state and federal law.

Request for Judicial Notice Ex. 3, ECF No. 22 at 12-13; *See* Complaint, ECF No. 1, ¶ 20.[2]

Plaintiffs say that the controversy in this case for guns not listed in AFS is that notwithstanding California Penal Code section 33855's plain language that does not "require proof of ownership, Cal-DOJ insists through their release letters that a gun-owner prove ownership of their personal property, even when ownership of the firearms is not controverted." Opposition, ECF No. 24 at 7. Plaintiffs argue that California Evidence Code section 637 creates a presumption that someone possessing something owns it. *Id.* at 8. According to Plaintiffs, the problem with the letters is the "proof of ownership" language, and the CalDOJ ought to remove it. *Id.* Plaintiffs do not dispute that the letters can include language that the law enforcement agencies have an obligation to inform rightful owners whose firearms have been reported lost or stolen. *Id.* at 9 (citing Cal. Penal Code § 33855(c)). But as is, the letters mislead the law enforcement agencies. *Id.* at 9-10.

With this context, the court turns to the Eleventh Amendment.

**B. Rule 12(b)(1) and Eleventh Amendment Immunity**

The court first sets forth the general legal standards and then analyzes whether an exception under *Ex Parte Young* allows the lawsuit here against the AG and the CalDOJ.

**1. Standards Generally**

Dismissal is appropriate under Rule 12(b)(1) when the court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). Federal subject matter jurisdiction must exist at the time

---

[2] The AG and the CalDOJ ask the court to take judicial notice of this and other sample letters that the CalDOJ Bureau of Firearms sends to claimants seeking the return of handguns or long guns. *See* ECF No. 22. They are authenticated by the Chief of the Bureau of Firearms. *Id.* at 22. Exhibit 3 is consistent with the excerpts in the complaint at paragraph 20. Plaintiffs do not object, at least insofar as Defendants introduce it as part of a 12(b)(1) motion for lack of subject matter jurisdiction. *See* Opposition, ECF No. 24 at 5 (citing form letter) and 11 n.5. The court takes judicial notice of it only in this context and only to provide context. *See* Fed. R. Evid. 201(b) ("A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."). Records, reports, and other documents on file with administrative agencies are judicially noticeable. *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001); *see also al-Kidd v. Ashcroft*, 580 F.3d 949, 954 n.6 (9th Cir. 2009); *Marsh v. San Diego Cnty.*, 432 F. Supp. 2d 1035, 1043-45 (S.D. Cal. 2006).

the action is commenced. *See Morongo Band of Mission Indians v. California Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).

A Rule 12(b)(1) motion may attack either the sufficiency of the pleadings to establish federal jurisdiction (a facial challenge) or allege a lack of jurisdiction that exists despite the formal sufficiency of the complaint (a factual challenge). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Thornhill Publishing Co., Inc. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987). For facial challenges, the court accepts all allegations of fact in the complaint as true and construes them in the light most favorable to the plaintiffs. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). For factual challenges, the court need not assume the truth of factual allegations but may hear additional evidence about jurisdiction and resolve factual disputes when necessary. *See Roberts*, 812 F.2d at 1177 (quotation omitted). If a defendant challenges jurisdiction by presenting evidence, then the party opposing the motion must present sufficient evidence to support the court's subject-matter jurisdiction. *See Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).

Dismissal of a complaint without leave to amend should be granted only if the jurisdictional defect cannot be cured by amendment. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Eleventh Amendment bars a lawsuit against a state or its instrumentalities absent the state's consent or abrogation of immunity by Congress. *See Papasan v. Allain*, 478 U.S. 265, 276-77 (1986). Section 1983 did not abrogate a state's Eleventh Amendment immunity. *See Quernn v. Jordan*, 440 U.S. 332, 341 (1979). California has not waived its immunity generally for section 1983 claims like the ones here. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). *Ex Parte Young* allows some lawsuits for prospective declaratory and injunctive relief against state officers sued in their official capacities to enjoin an ongoing violation of federal law. *See* 209 U.S. 123 (1908); *Wilbur v. Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005).

As to the CalDOJ, it is a state agency and not a state official. State agencies are immune from suit. *See Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 *opinion amended on denial of reh'g,*

312 F.3d 416 (9th Cir. 2002). Any lawsuit should be filed against the official, not the state. *See Sauceda v. Dept. of Labor and Indus. of State of Washington*, 917 F.2d 1216, 1218 (9th Cir. 1990).

The AG is an official, however, and presumably Plaintiffs also could have sued someone at the CalDOJ such as the Chief of the Bureau of Firearms. *See* Lindley Decl., ECF No. 22 at 3; *Eminence Capital*, 316 F.3d at 1052 (court to grant leave to amend to correct jurisdictional defects). A lawsuit for injunctive relief under *Ex Parte Young* would be appropriate if these state defendants have some connection with the federal violation. *See Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998). The connection "must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provisions will not subject an official to suit." *Los Angeles County Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

**2. Whether *Ex Parte Young* Permits the Lawsuit Here**

The issue is whether *Ex Parte Young* allows the lawsuit here against the AG and someone (such as the Chief of the Bureau of Firearms) at the CalDOJ. The AG and the CalDOJ say it does not because there is no direct link between what they have done and the injury that Plaintiffs suffered because local law enforcement independently decides whether to return firearms under the statutory factors. Motion, ECF No. 21 at 10-12. Also, they assert that the form letters to claimants are not legal opinions, let alone legal opinions to local law enforcement. *Id.*

Plaintiffs respond in their complaint and in their opposition that the letters cause confusion to law enforcement agencies, who rely on them and impose "prove up" requirements on owners even though the statute and the evidence code do not require this proof of ownership. Complaint, ECF No. 1 at 6, ¶ 21 and 10, ¶ A; Opposition at 14, ¶ 37.

In the end, the form letter does not create a sufficient connection to the SFPD's allegedly unconstitutional acts. The form letter is a notice of remedy to the claimant, and nothing suggests that it is any legal authority that is relied on by local law enforcement or ought to be relied on. To the extent that San Francisco or other local law enforcement agencies interpret and apply the law incorrectly and in violation of the Second and Fourteenth Amendments, the lawsuit against them provides the means for redressing the constitutional violations.

The Ninth Circuit has repeatedly rejected *Ex Parte Young's* applicability to claims against

1 attorneys general based on their general authority over law enforcement or based on their indirect
2 influence over law enforcement. "Where an attorney general cannot direct, in a binding fashion, the
3 prosecutorial activities of the officers who actually enforce the law or bring his own prosecution, he
4 may not be a proper defendant." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919
5 (9th Cir. 2004) (deciding that the Idaho Attorney General had sufficient connection to enforcement
6 of criminal penalties in state law governing minors' access to abortion services because that AG had
7 the power to deputize himself and step into the shoes of a county prosecutor).

8 For example, in *Long v. Van De Kamp*, the plaintiffs challenged a provision of the California
9 Vehicle Code that authorized warrantless searches without probable cause of automobile repair
10 shops for the purpose of locating stolen vehicles. 772 F. Supp. 1141 (C.D. Cal. 1991). The
11 plaintiffs, owners of a motorcycle repair shop that had been subjected to such searches, sued the
12 County of Los Angeles, the officers who carried out the searches, and the Attorney General of
13 California. *Id.* The district court held that *Ex Parte Young* allowed plaintiffs' suit against the AG,
14 "who ha[d] 'direct supervision' over county sheriffs and county district attorneys, [and was] the state
15 official responsible for the execution of the statute whose constitutionality is at issue." *Id.* at 1143
16 n.1. The Ninth Circuit, however, vacated and remanded to the district court because "[w]e doubt
17 that the general supervisory powers of the California Attorney general are sufficient to establish the
18 connection with enforcement required by *Ex Parte Young*." 961 F.2d 151, 152 (9th Cir. 1992) (per
19 curiam).

20 Similarly, in *Boston v. Harris*, the court held that there was an insufficient connection between
21 the California AG and the enforcement of two allegedly unconstitutional provisions of the California
22 Vehicle Code.[3] No. 11-CV-01872-PSG, 2012 WL 1029395 (N.D. Cal. Mar. 26, 2012). The AG
23 was a member of a commission that certified peace officers and instructed them on traffic
24 enforcement and arrests. *Id.* at *2. Boston argued that the AG's role on the commission as well as
25 her general supervisory powers over law enforcement established a sufficient connection. *Id.*

---

[3] The allegedly unconstitutional statutes related to speeding and driving while wearing headphones.

C 12-01740 LB (ORDER GRANTING MOTION TO DISMISS)
10

The court found the connection insufficient for two reasons. First, the general supervisory powers of the AG were insufficient under *Long v. Van de Kamp* (discussed above). *Id.* Second, the AG's role on the commission was too attenuated a connection because she neither controlled the commission nor set the minimum training standards for California peace officers. "While the [AG] does have a measure of supervisory authority over district attorneys, sheriffs and other law enforcement officers . . . under the California Constitution, this constitutional authority is not absolute." *Id.* at *2; *see also S. Pac. Transp. Co. v. Brown,* 651 F.2d 613, 614 (9th Cir. 1980) (holding that the Oregon attorney general, who had the power to "consult with, advise, and direct the district attorneys," had an insufficient connection to the challenged statute, because his advice to prosecutors that the statute was unconstitutional could not bind them and he could not bring a prosecution on his own).

This analysis applies here. The AG and a person at the CalDOJ (such as the Chief of Firearms) are immune from suit under the Eleventh Amendment because the connection between the form letter to claimants is too attenuated from the independent actions by local law enforcement. The court thus dismisses the claims against the AG and the CalDOJ. The remaining claims against local law enforcement provide the redress for the alleged constitutional violations.

The final issue is whether the court should grant leave to amend. *See* Fed. R. Civ. P. 15(a)(2) (courts should "freely give leave [to amend pleadings] when justice so requires."); *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987). Given the court's conclusion that a form letter to a claimant is insufficiently connected to the SFPD's decision, leave to amend is futile. Accordingly, the court dismisses Plaintiffs' claims against the AG and the CalDOJ with prejudice.

This disposes of ECF No. 21.

**IT IS SO ORDERED.**

Dated: November 20, 2012

_____
LAUREL BEELER
United States Magistrate Judge